[Civ. No. 4844.   First Appellate District, Division Two.—November 24, 1924.]

WESTERN STEEL & ENGINEERING COMPANY (a Corporation), Respondent, v. J. FEYKERT, etc., Appellant.

[1] CONTRACTS—CONSTRUCTION OF HIGH-PRESSURE PRESS—DAMAGES—DOCUMENTS—EVIDENCE.—In an action to recover damages caused by an alleged breach of a contract for the construction of a high-pressure press, where the plaintiff submitted blue-prints and a "part list" to defendant and asked the latter to make a bid on the construction of a high-pressure press, and thereafter defendant sent plaintiff a letter stating the price for which, and the time of delivery when, it would furnish the press complete in accordance with revised drawings, and plaintiff, by letter, placed its order for such press in accordance with defendant's letter, the trial court did not err in receiving in evidence the blue-prints, the part list and the letters as evidence of what constituted the contract, if any, existing between the parties.

[2] ID.—CONSTRUCTION OF PRESS—NONCOMPLIANCE WITH CONTRACT—FINDINGS.—In such action, the trial court was correct in finding that the press as made by defendant was not in accordance with "certain drawings and specifications theretofore delivered to defendant by plaintiff," and in finding also that the press as made "was not constructed in accordance with the plans and specifications of said contract."

[3] ID.—PURPOSES OF PRESS—FINDINGS—EVIDENCE.—In such action, although the evidence relating to a finding that prior to entering

———

1.  See 6 R. C. L. 850; 6 Cal. Jur. 298.

into the contract plaintiff informed defendant of the purposes for which it intended to use the press was distinctly conflicting, it cannot be said that there was no evidence to support the finding.

[4] ID.—ADDITIONAL CONTRACT — EVIDENCE — In such action, testimony of the president of the plaintiff corporation to the effect that, upon his objection being made to certain parts of the press, the defendant stated that if plaintiff would pay a stated sum on the balance remaining unpaid that defendant would guarantee that the parts would stand up in doing the work that the press was intended to do, and that he (the said president) thereupon drew his check for said sum, did not constitute parol evidence varying the terms of the contract that had theretofore been written between the parties; the facts testified to constituted an additional and separate agreement, but if the testimony should not have been received, it was not prejudicial error to receive the testimony or to make findings thereon in favor of plaintiff where the other findings would, standing alone, constitute a full and sufficient showing in behalf of the plaintiff.

[5] ID.—JUDGMENT—LABOR CHARGE—EVIDENCE.—In such action, the charge allowed plaintiff for labor in repairing certain parts of the press was proper where the evidence showed that the men who did the work were experienced machinists and where one of them testified that he knew the reasonable value of wages being paid machinists and that the wage per day, which was charged, was a reasonable wage for that class of work, and that he and the other man worked the number of days stated in the charge.

---

(1) 35 **Cyc.**, p. 628.    (2) 35 **Cyc.**, p. 261.    (3) 35 **Cyc.**, p. 651. (4) 4 **C. J.**, p. 987, sec. 2969; 22 **C. J.**, p. 1276, sec. 1698.    (5) 35 **Cyc.**, p. 632.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    T. I. Fitzpatrick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wesley W. Kergan for Appellant.

Aitken & Aitken for Respondent.

STURTEVANT, J.—The plaintiff commenced an action to recover damages caused by an alleged breach of contract.

---

4. Parol evidence to add to or vary a writing, note, 56 **Am. St. Rep.** 659.    See, also, 10 **R. C. L.** 1033; 10 **Cal. Jur.** 928.

5. See 11 **R. C. L.** 640; 10 **Cal. Jur.** 1026.

The defendant appeared and answered and filed a cross-complaint. The plaintiff answered the cross-complaint and a trial was had in the lower court, the court sitting without a jury. The judgment went for the plaintiff and the defendant has appealed.

The appellant, in several ways, contends that the trial court received evidence varying the terms of a written contract. To understand these contentions it will clarify the matter to state that in October, 1920, the plaintiff applied to the defendant to make a bid on the construction of a high-pressure press. For the purpose of that application the plaintiff submitted a set of blue-prints. The minds of the parties never met on the above-mentioned application and all matters concerning it were subsequently dropped. Later the plaintiff prepared another set of blue-prints. The one that is involved in this case was introduced on the trial and is known as plaintiff's exhibit 5. A duplicate copy of plaintiff's exhibit 5 was also introduced and was marked defendant's exhibit 4. Each set of blue-prints contained sheets marked 1–1–1, 1–1–3, 1–1–4, 1–1–6, 1–1–7, 1–1–8, 1–1–9, 1–1–12, 1–1–13, 1–1–14. At this time it is proper to remark that on each and every sheet there are not only drawings but numerous specifications—and in particular on sheet 14. On that sheet there are numerous measurements, not only as to distances, but as to the dimensions of bolts, bolt holes, weights of materials, and in almost every instance the particular number to be included of each item. Prior to February 8, 1921, according to the testimony of Mr. Staley, the president of the plaintiff corporation, he had delivered into the hands of the defendant a set of the blue-prints and also a paper marked plaintiff's exhibit 6, and marked at the head or top, "Part List for Western High Pressure Continuous Press—see assembly drawing 1–1–1 January 31, 1921." The paper called "Part List" purports to state, in the left-hand column, the numbers 1 to 99, inclusive, of the parts as shown and numbered on that sheet of the drawings which was marked "1–1–1." The second column indicates on which sheet of the drawings the part appears. The third column states the number, per press, of each of the parts, and the fourth column states the dimensions, and, in some instances, weight, strength, and particu-

lar brand of article to be used. Turning to the blue-prints, the first sheet is marked "1–1–1" and on its face one finds what is apparently a side view and also a view looking from above. On the sides of each diagram appear numbers corresponding with the numbers contained in the left-hand column of the "Part List." The first item on the "Part List," reading the same in connection with the column heading, is as follows: "Part No. – 1; Shown on Drawing No.– 1–1–14; No. required per press – 2; Description – 15" Channels 55 lbs. 20 ft. long. . . . " After holding the blue-prints and part list for a few days the defendant wrote the plaintiff as follows:

"February 8, 1921.

"Western Steel & Engineering Co.
    35 Montgomery St., City.

"Gentlemen:

"We will furnish complete in accordance with revised drawings submitted one continuous high pressure press for the sum of thirty-one hundred (3100.) dollars. Delivery can be made in about forty-five days. This price includes cost of pattern work at four hundred fifty dollars, these patterns to become your property.

"Thanking you for your inquiry, we are,

"Yours very truly,
"Fair Manufacturing Co.
"By H. R. Hill, Manager."

Thereafter, on February 28, 1921, the plaintiff wrote to the defendant as follows:

"Fair Manufacturing Company,
    617–621 Bryant Street,
        San Francisco, Cal.

"Attention: Mr. Hill, Manager.

"Gentlemen:

"Replying to your letter of February 8th, we herewith place an order, in accordance with your letter, for one (1) Continuous High Pressure Press, for the sum of thirty-one hundred ($3100) dollars. Delivery to be made in about forty-five days.

"This price includes cost of pattern work at four hundred fifty ($450) dollars, these patterns to become our property.

"Yours very truly,

"WESTERN STEEL AND ENGINEERING Co.

"H. D. STALEY."

[1] Under the facts above stated the trial court did not err in receiving in evidence the blue-prints, the part list and the letters above quoted as evidence of what constituted the contract, if any, existing between the plaintiff and the defendant.

The respondent contends that the copy of sheet number 14, of blue-prints that was delivered to the defendant had a blank filed in so that it read, "2-15" [s wt. 55 lbs. 1 right and 1 left." And the respondent claims that someone has mutilated the defendant's copy and has erased the "55" by the use of chemicals. Much evidence was taken in the trial court on the subject. The record does not show whether the trial court reached the conclusion that an erasure was or was not made. The copy which was before the trial court is before this court and has been carefully examined by us. It shows no evidence on its face of any erasure. Among the exhibits sent up there are ten extra copies of the same sheet. No one of these copies shows that "55" was inserted in the blank. Among the exhibits is also the original tracing of the same sheet. That tracing shows no evidence of any figures being inserted in the blank. We have thus fully stated the record to clear the point but the point does not seem to us to be determinative of the rights of the parties.

[2] The appellant contends that the findings are not sustained by the evidence. In making this point the appellant claims that the "Part List" was not a part of the contract and that there were no specifications. As we have pointed out above, we cannot agree with the appellant in these two contentions. The "Part List" was a part of the contract and contained numerous specifications. Other specifications were written on the drawings. Although, as we have stated, the weight of the channels was not inserted in the blank on the drawings, it was, nevertheless, the first specification at the head of the "Part List," and was, therefore, one of the specifications of the contract. The evidence without conflict is that the channels furnished were of the weight

of thirty-three pounds. The trial court was quite correct, therefore, in finding that the press as made was not in accordance with "certain drawings and specifications theretofore delivered to defendant by plaintiff," and in finding also that the press as made "was not constructed in accordance with the plans and specifications of said contract."

[3] In its complaint the plaintiff alleged, among other things, that prior to entering into said contract plaintiff informed defendant of the purposes for which it intended to use said press. The court found the facts in accordance with that allegation. The evidence on the subject was distinctly conflicting but it cannot be said that there was no evidence to support the finding.

[4] When the defendant was ready to make delivery of the press Mr. Staley testified that he went to examine the press. He further testified that at the time he made the examination he objected to the channels as not being made out of fifty-five pound material. He further testified that upon the objection being made, and upon an examination of the above-mentioned papers, which we have indicated constituted the contract, that then the defendant stated to the plaintiff that if the plaintiff would pay $3,000 on the balance remaining unpaid that the defendant would guarantee that the channels would stand up in doing the work that the press was intended to do. Mr. Staley testified that upon that promise being made he drew his check for $3,000. These facts were alleged by the plaintiff and the court found the facts in favor of the plaintiff. At this time the appellant claims that the trial court should not have received the parol evidence just mentioned because such evidence had the effect of varying the terms of the contract that had theretofore been written between the parties. We cannot agree with the appellant in this claim. If the facts existed as testified to by Mr. Staley, then such facts would constitute an additional and separate agreement but would not constitute necessarily an alteration or amendment of the original contract. However, assuming that we are mistaken in the view which we have just expressed as to this feature, it is clear that it was not a prejudicial error to receive the testimony or to make the findings complained of because the other findings would,

standing alone, constitute a full and sufficient showing in behalf of the plaintiff.

[5]   The amount of the judgment awarded the plaintiff was $575.83.   That item was made up of the labor charge consisting of $420.   The appellant calls to our attention that after the plaintiff repaired the channels to the press the plaintiff sent to the defendant, on December 6, 1921, a bill including an item of $210, estimated at $10 a day for twenty-one days' labor, by Mr. Elfstrum, one of. the officers of the plaintiff, and for an equal amount for labor performed by Mr. Staley.   The appellant claims that the plaintiff, in introducing its evidence, did not introduce any evidence as to the reasonable length of time it would take to do the work, or the value thereof.   The defendant's testimony on this subject was to the effect that a good machinist and a helper would do the work in not to exceed four days on the job where the press is at the present time, and a machinist would receive $8 a day and the helper $5 a day.   If there were no other evidence in the record the appellant's point might be good.   But on an examination of the testimony of Mr. Staley as contained in the record, it is disclosed that Mr. Elfstrum and Mr. Staley were experienced machinists and that the witness knew the reasonable value of wages being paid machinists and that $10 a day was a reasonable wage for that class of work; and it also appears in the testimony of the same witness that he and Mr. Elfstrum worked the number of days stated in their bill hereinabove referred to.

We find no error in the record.   The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.